I believe that the majority has erred in its application of the law of negligence to the facts of the present case. Because I believe that Defendant negligently breached its duty to protect Plaintiff from harming himself, I respectfully dissent.
Plaintiff was involuntarily committed to Defendant Cherry Hospital as a danger to himself on May 16, 2000, after cutting his own head, chest, and legs extensively with a box cutter in the hope of receiving narcotic painkillers for his injuries. After commitment to Defendant hospital, Plaintiff made repeated efforts to obtain narcotic painkillers from Defendant's staff, attempting to persuade one nurse that his right leg was broken and another that his left knee was broken, to no avail. Plaintiff even suggested that he might intentionally run his head through glass, in an effort to inflict an injury that would require the administration of narcotic painkillers. Plaintiff was informed by Defendant hospital in no uncertain terms that he would not be provided with narcotics, and that self-injury would not be rewarded with narcotics.
Plaintiff responded poorly to the denial of narcotics by Defendant, threatening to sue Defendant hospital for "poor health care" and, at one point, attempting to throw a wheelchair at members of Defendant's staff. Plaintiff also repeatedly provoked other patients at Defendant hospital, even going so far as to dare them to strike him.
On May 17, 2000, the second day of Plaintiff's involuntary commitment at Defendant hospital, at approximately 4:18 pm, Plaintiff was attacked by certain other patients at Defendant hospital, resulting in the fracture of Plaintiff's left leg. The attack was apparently related to an incident that had occurred just one hour before, at 3:15 pm, wherein Plaintiff was involved in a heated verbal confrontation with another patient over the other patient's missing cigarette lighter. A member of Defendant's staff witnessed and intervened in the earlier verbal confrontation, and separated the patients. However, although four members of Defendant's staff were on duty on the ward at approximately 4:18 pm, none of them were present to witness or intervene in the physical altercation that took place between Plaintiff and the other patients — despite the fact that one staff member was actually in the same room with Plaintiff at the time and was no more than 15 feet away from the site of the altercation.
The majority has concluded that Defendant did not breach its duty to care for Plaintiff during his involuntary commitment because there was no evidence in the record that Plaintiff had provided prior notice to Defendant concerning threats allegedly made against him. Alternately, the majority suggests that Plaintiff's claim of negligence is barred by plaintiff's own actions in provoking other patients and placing himself in a position to be attacked.
I believe the majority has misapprehended the applicable standard of care owed by Defendant to Plaintiff. In Davis v.North Carolina Dept. of Human Resources, 121 N.C. App. 105,465 S.E.2d 2 (1995), disc. rev. denied, 343 N.C. 750,473 S.E.2d 612 (1996), the Court of Appeals recognized that a state hospital such as Defendant owes a duty of care to the public to protect them from individuals involuntarily committed to the hospital as a danger to others. Davis at 112, 465 S.E.2d at 7. Because in the present case Plaintiff was involuntarily committed to Defendant as a danger to himself, it follows, in accordance with Davis, that Defendant owed Plaintiff a duty to protect Plaintiff from himself. After all, if involuntary commitment proceedings didn't create such a duty in Defendant, there would be no point in involuntarily committing someone as a danger to himself. The whole purpose of involuntary commitment for being a danger to oneself is to remove the responsibility for self-protection from an individual who manifestly cannot be trusted with it, such as Plaintiff, and place that burden of protection instead on the institution to which the individual has been involuntarily committed, in this case Defendant hospital.
In light of Defendant's duty under Davis to protect Plaintiff from harming himself, the record on appeal unambiguously demonstrates that Defendant had adequate notice of Plaintiff's risk to himself. Aside and apart from the very fact that Plaintiff was involuntarily committed for being a danger to himself, the majority's own findings of fact demonstrate that Plaintiff's brief period of commitment prior to his injury included explicit threats of self-injury (threatening to run his head through glass), violent displays of emotion (attempting to throw a wheelchair at Defendant's staff), and repeated provocation of other patients on the ward (including daring other patients to strike him). In fact, Defendant's staff had witnessed a heated verbal confrontation between Plaintiff and another patient just an hour before the physical altercation leading to Plaintiff's injury. On the basis of those facts, I believe Plaintiff has proved that Defendant had adequate notice that Plaintiff was in danger from himself at the time of his injury.
Furthermore, Plaintiff's own role in provoking other patients and placing himself in a position to be attacked does not
constitute a bar to his claim of negligence. Plaintiff cannot be deemed contributorily negligent for his actions under a "reasonable person" standard because there can be no legal expectation that Plaintiff would act as a "reasonable person" in regard to his own safety, given that he was involuntarilycommitted to Defendant hospital precisely because of his inability to act reasonably. To hold Plaintiff to a "reasonable person" standard after having deprived him of his liberty in order to protect him from his own unreasonable behavior presents a legal absurdity which I decline to adopt.
Plaintiff's claim is also not barred by the intervening nature of his attackers' actions:
 "In order for the conduct of the intervening agent to break the sequence of events and stay the operative force of the negligence of the original wrongdoer, the intervening conduct must be of such nature and kind that the original wrongdoer had no reasonable ground to anticipate it."
Davis at 116, 465 S.E.2d 9 (citation omitted). Even insofar as the actions of Plaintiff's attackers constitute a culpable act engendering individual liability for Plaintiff's injury (as supported by the civil award granted to Plaintiff by the Wilson County Superior Court), I do not believe that Defendant had "no reasonable ground to anticipate" the attack on Plaintiff by other patients, particularly given Defendant's knowledge of Plaintiff's violent tendencies and Plaintiff's repeated provocations of other patients.
Finally, the majority suggests that Plaintiff's claim must fail because he failed to present specific evidence of negligence on the part of the particular individuals named in his Affidavit. However, there is no evidence in the record that Plaintiff's affidavit presented Defendant with insufficient information to investigate Plaintiff's claim. In Davis, the Court of Appeals held that the plaintiff's naming of the defendant's Director of Clinical Services, instead of the particular negligent psychiatrist who recommended the patient's release, was not fatal to the plaintiff's claim under the Tort Claims Act:
 The purpose of requiring a claimant to name the negligent employee of the State agency is to enable the agency to investigate the employee involved and not all employees. Furthermore, although the Tort Claims Act is strictly construed, the rule of strict construction should not be replaced by one of "technical stringency." Plaintiff's affidavit gave sufficient notice to defendant to allow it to narrow its investigation to those involved with treating [patient] Rivers. The affidavit notified defendant that [the deceased's] death was caused by a former patient, Rivers, who had been involuntarily committed to [defendant] Cherry Hospital. Plaintiff named the correct state agency, as required by section 143-297, the specific division of that agency, as well as the hospital at which Rivers was committed and where the alleged negligence took place. At no time did defendant indicate that it was hampered in its investigation. Failure to name [negligent psychiatrist] Dr. Perumallu, therefore, did not impede defendant's investigation, and the objective of section 143-297 was achieved.
Davis at 111, 465 S.E.2d 6 (citations omitted). Because Plaintiff, in his Affidavit, adequately notified Defendant as to the details of when and where Defendant's alleged negligence took place, and because Defendant has not indicated that its investigation was hampered in any way, I believe that Plaintiff's negligence claim survives his failure to name with particularity in his Affidavit each of Defendant hospital's staff members on duty on the ward at the time of his injury.
I believe that, by virtue of Plaintiff's involuntary commitment to Defendant hospital as a danger to himself, Defendant owed Plaintiff a duty to protect Plaintiff from himself during his period of involuntary commitment. I further believe that Defendant and its staff negligently breached their duty to Plaintiff by failing to take adequate steps to prevent Plaintiff from coming to harm by his own actions. Finally, I believe that Defendant's negligent breach of its duty to Plaintiff proximately led to the attack upon Plaintiff by other patients, resulting Plaintiff's injury. For these reasons, I respectfully dissent.
This the 28th day of April, 2006.
 S/_____________ THOMAS J. BOLCH COMMISSIONER